UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY RAINS, | Case No. 3:12-cv-00517-MMD-VPC |
| Plaintiff, | |
| v. | ORDER |
| NEWMONT USA LIMITED, a foreign corporation | (Def's Motion to Dismiss – dkt. no. 43) |
| Defendant. | |

I.    SUMMARY

Before the Court is Defendant Newmont USA Limited's Motion to Dismiss Third Amended Complaint. (Dkt. no. 43.) For the reasons discussed below, the motion is granted.

II.    BACKGROUND

Plaintiff Anthony Rains alleges that he was employed by Defendant as a "miner working the shotcrete truck position" beginning in 2008. (Dkt. no. 42 ¶ 3.) Plaintiff states that he had a foot and ankle injury (*id.* ¶ 4), and a heart complication that required time off from work (*id.* ¶ 5). According to Plaintiff, he returned to work from an unspecified period of "medical leave" on November 15, 2011, and was demoted for his absences. (*Id.* at ¶ 9.) That same day, Plaintiff alleges he "decided that for safety reasons, he would not be able to finish his shift" and "requested permission to leave due to his serious mental and emotional health condition caused by the demotion." (*Id.* at ¶ 11.) Plaintiff's supervisor allegedly told him he could leave but that he "could get a write-up." (*Id.*)

1  Plaintiff states that he left anyway and was suspended on November 16, 2011, and
2  terminated on November 20, 2011, because he "abandoned his job[.]" (*Id.* at ¶¶ 11, 13.)

3      In the Third Amended Complaint ("TAC"), Plaintiff brings a claim for interference
4  under the Family Medical Leave Act ("FMLA") and a claim for tortious discharge.
5  Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. no.
6  43.) Plaintiff filed an opposition (dkt. no. 44) and Plaintiff filed a reply (dkt. no. 45.)

7  **III.   DISCUSSION**

8      **A.    Legal Standard**

9      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which
10 relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide
11 "a short and plain statement of the claim showing that the pleader is entitled to relief."
12 Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rule 8
13 notice pleading standard requires Plaintiff to "give the defendant fair notice of what the . .
14 . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal
15 quotation marks and citation omitted). While Rule 8 does not require detailed factual
16 allegations, it demands more than "labels and conclusions" or a "formulaic recitation of
17 the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing
18 Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to
19 rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to
20 dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that
21 is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

22     In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to
23 apply when considering motions to dismiss.  First, a district court must accept as true all
24 well-pled factual allegations in the complaint; however, legal conclusions are not entitled
25 to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a
26 cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.
27 Second, a district court must consider whether the factual allegations in the complaint
28 allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the

plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### B.    Family Medical Leave Act

To establish a claim for interference under the FMLA, Plaintiff must allege: (1) that he exercised his rights under the FMLA; (2) Defendant engaged in activity designed to chill his exercise of those rights; and (3) Defendant's activities were motivated by the exercise of those rights. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124-26 (9th Cir. 2001). Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

In this Court's order dismissing Plaintiff's Second Amended Complaint ("SAC"), the Court found that Plaintiff failed to sufficiently allege that he exercised his rights under the FMLA. (Dkt. no. 41 at 4.) The same is true regarding the TAC. In fact, the TAC changes very little from the SAC. The TAC clarifies that it makes two claims of interference: (1) that Defendant used Plaintiff's "pre-demotion leave" as a negative factor in demoting and terminating him; and (2) that Defendant used Plaintiff's "post-demotion

leave" as a factor in terminating him. (Dkt. no. 42 ¶ 22.) The TAC does not allege that Plaintiff requested or received FMLA leave at any time.

With regard to Plaintiff's "pre-demotion leave," the Court's primary concern is whether Plaintiff has alleged any facts to support the required element that Defendant's decision to demote Plaintiff was motivated by his FMLA-qualified leave. In its order dismissing the SAC, the Court noted that "[t]o the extent that the [SAC] is alleging that it was the absences Plaintiff took to deal with his heart problems and arthritis that caused his demotion and termination, the [SAC] fails to allege any specific facts supporting that theory of causation" because it "does not say when Plaintiff took those prior leaves of absence and how close they were in proximity to his demotion on November 15, 2011, and his termination on November 20, 2011." (Dkt. no. 41 at 4.) The same is true for the TAC. The TAC states that "[u]pon returning to work from medical leave on November 15, 2011," Plaintiff was demoted. (Dkt. no. 20 at ¶ 9.) The TAC also adds that Plaintiff's "serious health condition prior to his demotion necessitated the leave for his foot and ankle condition." (*Id.* ¶ 21.) It's not clear, however, whether the TAC is alleging that the "medical leave" from which Plaintiff returned on November 15, 2011, was due to his foot and ankle condition, or simply alleging that he took time off for this condition prior to the date of his demotion. The TAC therefore provides no sense as to when his FMLA-qualifying leave was taken in relation to his demotion. The TAC states that Plaintiff began working for defendant in 2008. He was demoted and fired in November 2011. That is a period of approximately three (3) years in which Plaintiff could have been taking leave for his foot an ankle condition.

While the TAC alleges that Defendant "used Plaintiff's pre-demotion leave [as] a negative factor in demoting him and terminating him[,]" the TAC is devoid of factual allegations that establish any kind of temporal proximity or any other facts to suggest that Defendants were motivated by Plaintiff's FMLA-qualified leave in demoting him. That Plaintiff's leave was taken for a serious health condition at some unspecified time and that Plaintiff was demoted at some unspecified period after leave was taken is not

sufficient to state a claim for FMLA interference. These vague, conclusory allegations do not permit the Court to draw a reasonable inference of any causal connection between Plaintiff's protected FMLA leave and his demotion and termination. Without drawing some factual connection between FMLA-qualified leave and Plaintiff's demotion, the Court cannot do more than infer the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679.

With regard to Plaintiff's "post-demotion leave," the TAC alleges that the day he was demoted, Plaintiff "requested permission to leave due to his serious mental and emotional health condition caused by the demotion." (*Id.* ¶ 11.) The next day, Plaintiff was suspended, and he was terminated for abandoning his job four (4) days after his suspension. (*Id.* ¶¶ 12–13.) The TAC does not allege facts to support the inference that this condition was a "serious health condition" as required by the FMLA. The TAC merely makes the conclusory assertion that the condition was a "serious health condition" and describes it as "mental and emotional shock, anxiety and depression" but gives no indication that Plaintiff required, or received, any medical treatment as is required by the FMLA. 29 U.S.C. § 2611(11). Plaintiff was put on notice of this very deficiency in the Court's previous order. (Dkt. no. 41 at 4.)

The Court determines that Plaintiff has not alleged sufficient facts to allow the Court to draw a reasonable inference that Defendant is liable for FMLA interference. As with the SAC, the timing of Plaintiff's "pre-demotion" leave is left vague and unclear, as is whether the "post-demotion" leave qualified for the FMLA. Thus, Plaintiff's FMLA claim lacks factual support and fails to rise above a "speculative level." *Twombly*, 550 U.S. at 555.

## C.    Tortious Discharge

As the Nevada Supreme Court has explained, "[a]n employer commits a tortious discharge by terminating an employee for reasons [that] violate public policy." *D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991). "[P]ublic policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct

violates *strong and compelling* public policy." *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) (emphasis added). Some examples of these cases include: "the discharge of an employee for seeking industrial insurance benefits, for performing jury duty, for refusing to work under unreasonably dangerous conditions, or for refusing to violate the law." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 910 (D. Nev. 1993). Terminating an at-will employee for insubordination is not contrary to public policy. *See Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996). Finally, recovery for tortious discharge is not permitted under Nevada law where there are mixed motives for the termination. *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1066 (Nev. 1998). The protected activity must have been the sole proximate cause of the termination. *Id.*

In its previous order, the Court dismissed Plaintiff's tortious discharge claim because:  (1) although the SAC premised the claim on the fact that Plaintiff "refused to perform tasks when the task ordered would violate mine safety and health laws," it did not describe or identify said "mine safety and health laws;" and (2) the SAC did not provide sufficient facts to support a reasonable inference that said refusal was the sole proximate cause of Plaintiff's termination. (Dkt. no. 41 at 5.)

The TAC fails to address these deficiencies. Regarding causation, the TAC alleges that Plaintiff shut shotcrete down because one of the hoses was not properly clamped in January 2011. (Dkt. no. 42 ¶ 7.) That was ten (10) months before his termination in November 2011. The TAC also alleges that Plaintiff voiced a safety concern about staffing loading rounds in April 2011, seven (7) months before his termination. (*Id.* ¶ 8.) There are no factual allegations about those intervening seven (7) months that would allow the Court to infer that voicing these safety concerns was the sole proximate cause of Plaintiff's termination or that they are even related.

Plaintiff's remaining allegation of protected activity is that he refused to work on November 15, 2011, because working in his "distressed condition" would violate mine safety and health regulations. (*Id.* ¶¶ 11, 27-29.) In order to prevail on a tortious discharge claim, "the employee must be able to establish that the dismissal was based

upon the employee's *refusing to engage in conduct that was violative of public policy* or upon the employee's *engaging in conduct which public policy favors* (such as, say, performing jury duty or applying for industrial insurance benefits)." *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995) (emphasis added). Here, the TAC asserts that Nevada does have an important public policy in "mine safety and health" as demonstrated by "the legislature's passage of [a] law delegating authority to the State Administrator to promulgate regulations that may provide protections equal to or greater than the federal Mine Safety and Health Act." (Dkt. no. 42 ¶ 29.) The Court finds this allegation is sufficient to establish that Nevada does have a public policy interest in the health and safety of miners working in the state, but Plaintiff does not identify any applicable regulations to Plaintiff's conduct and instead summarily states that there are "regulations on point" regarding Plaintiff's actions on November 15, 2011. (*Id.*) This is no more than a legal conclusion and will not be accepted as true.

Taking all of the TAC's factual allegations as true, the facts establish that on November 15, 2011, Plaintiff requested permission to leave "due to his serious mental and emotional health condition" resulting from his demotion that day. (*Id.* ¶11.) Plaintiff was told he could get a write-up for leaving. (*Id.*) The next day he was suspended and terminated shortly thereafter. (*Id.* ¶¶ 12–13.) From these facts, the Court cannot reasonably infer that Defendant's conduct violated "strong and compelling public policy." *Valgardson*, 777 P.2d at 900. While the TAC states that "[e]ssentially, [Plaintiff] was refusing to violate mine safety and health law and regulations" (*id.* ¶ 11), there is nothing in the TAC to support that conclusion. In addition to not providing or describing said regulations, the TAC's facts do not support the inference that Defendant was ever told or understood that Plaintiff went home that day for safety reasons. Therefore, from the allegations in the Complaint, the Court cannot infer that Plaintiff was ordered to perform an unsafe task on November 15, 2011, or that he spoke out about any safety concerns, or that any safety regulations were applicable, or that Defendant was aware that Plaintiff went home for safety reasons. "The gravamen of the tort is the employer's improperly

1   dismissing an employee for public policy-related causes." *Bigelow*, 901 P.2d at 632.

2   While Plaintiff might believe, perhaps rightfully so, that he should not have been

3   terminated for job abandonment, the TAC's facts, as alleged, do not lead the Court to

4   the inference that Defendant terminated Plaintiff solely for public policy-related reasons.

5   The Court finds that the TAC does not show that Plaintiff is entitled to relief

6   pursuant to his tortious discharge claim.

7   As this is Plaintiff's third amended complaint, and as Plaintiff has failed to cure the

8   deficiencies specifically pointed out by the Court's previous order, the TAC is dismissed

9   with prejudice.

10  **IV.   CONCLUSION**

11  The Court notes that the parties made several arguments and cited to several

12  cases not discussed above. The Court has reviewed these arguments and cases and

13  determines that they do not warrant discussion as they do not affect the outcome of the

14  Motion.

15  It is hereby ordered that Defendant's Motion to Dismiss (dkt. no. 43) is granted.

16  The Complaint is dismissed with prejudice.

17  The Clerk is directed to close this case.

18  DATED THIS 29th day of September 2014.

19

20

21  _____
    MIRANDA M. DU

22  UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

8